# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT KLUGE, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>HALFDAY TONICS INC., a Delaware corporation,<br><br>        Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff ROBERT KLUGE, ("Plaintiff") individually and on behalf of all others similarly situated, brings this action based upon personal knowledge as to his own acts and experiences, and as to all other matters upon information and belief, based upon, among other things, the investigation of his attorneys.

## NATURE OF THE ACTION

1.    This is a false advertising case about a simple promise: Defendant Halfday Tonics Inc. ("Defendant" or "Halfday") told consumers that its ready-to-drink prebiotic iced tea beverages (the "Products") were low-sugar products containing only 3 grams, 3 to 5 grams, or similarly low amounts of sugar per can. For Raspberry Iced Tea, by way of example, Halfday made that promise on the front of the can, in a bright green "3g sugar" callout, and again in the Nutrition Facts panel, where it represented "Total Sugars 3g."

2.    That promise was false. Independent laboratory testing showed that Halfday Raspberry Iced Tea contained approximately 9.69 grams of sugar per can, more than three times the amount Defendant represented.



1

3.      Defendant's misrepresentations were material. Halfday did not sell the Products as ordinary sugary beverages. It sold them as better-for-you iced teas for consumers seeking healthier alternatives to traditional sodas and sweetened teas. The challenged low-sugar representations were central to that promise.

4.      Defendant also made the challenged low-sugar representations in the most trusted place a food company can make them, the Nutrition Facts panel. Consumers reasonably rely on the Nutrition Facts panel because it is federally mandated, standardized, and designed to provide accurate nutrition information at the point of purchase. By placing specific total-sugar declarations in the Products' Nutrition Facts panels, including "Total Sugars 3g" for Raspberry Iced Tea, Defendant made its low-sugar claims appear objective, regulated, and reliable.

5.      Defendant knew or should have known the true sugar content of the Products. Defendant controlled their formulas, selected their sweetening ingredients, approved their labels, created their Nutrition Facts panels, and marketed them around a low-sugar profile. If the Products contained materially more sugar than represented, the misrepresentations arose from Defendant's own formulation, testing, labeling, quality-control, marketing, or approval processes.

6.      Plaintiff Robert Kluge purchased a Halfday Prebiotic Iced Tea variety pack that included one of the Products, Halfday Raspberry Iced Tea. Plaintiff and other reasonable consumers purchased the Products believing they were receiving the low-sugar beverages Defendant promised. However, they did not receive the promised beverages they paid for.

7.      Plaintiff and the Class lost the benefit of their bargain because they paid for Products represented to contain only 3 grams, 3 to 5 grams, or similarly low amounts of sugar per can, but received Products containing materially more sugar than represented. They also paid a price premium for the represented low-

sugar attributes, product features that had independent economic value to health-conscious consumers.

8.  Defendant profited from that deception. By falsely advertising the Products as low-sugar beverages, Defendant extracted money from consumers seeking healthier alternatives, reaped ill-gotten gains, and distorted fair competition against businesses that accurately disclose their products' sugar content.

9.  Plaintiff brings this action on behalf of himself and similarly situated consumers to recover damages, restitution, disgorgement where available, statutory damages, injunctive relief, attorneys' fees, costs, and all other relief permitted by law.

## THE PARTIES

10.  Plaintiff Robert Kluge is a citizen and resident of New York, New York. Plaintiff purchased a Halfday Prebiotic Iced Tea variety pack through Amazon on or about May 14, 2024, for personal, family, or household use. The variety pack included Halfday Raspberry Iced Tea. The order confirmation identifies the product as "HALFDAY Prebiotic Iced Tea," quantity one, with an order total of $35.99, and reflects that the product was shipped to Plaintiff in New York, New York.

11.  Plaintiff Kluge would not have purchased the Halfday Prebiotic Iced Tea variety pack, including Halfday Raspberry Iced Tea, had he known that the Raspberry Iced Tea contained materially more sugar than Defendant represented.

12.  Plaintiff Kluge intends to continue purchasing ready-to-drink iced teas and other healthier alternatives to traditional sugary sodas and sweetened beverages in the future. Plaintiff regularly shops through Amazon and other New York retailers that sell the Products, including Halfday Raspberry Iced Tea, and is likely to encounter the Products again.

13.  Plaintiff would consider purchasing the Products, including Halfday Raspberry Iced Tea, in the future if Defendant corrected the challenged conduct by

3

ensuring that the Products' actual sugar content matches the sugar content represented on their labels, Nutrition Facts panels, website, and marketing materials. If Defendant continues selling the Products, Plaintiff needs accurate, clear, and non-misleading sugar disclosures so he can make informed purchasing decisions at the point of sale.

14.    Because Defendant continues to make low-sugar representations concerning the Products, including the representation that Halfday Raspberry Iced Tea contains only 3 grams of total sugar per can, Plaintiff cannot determine from the current labeling and marketing whether the Products have been corrected, reformulated, relabeled, or continue to contain materially more sugar than represented. Plaintiff therefore faces a real and immediate risk of future harm, including being misled again or being unable to rely on Defendant's sugar representations when deciding whether to purchase the Products.

15.    Defendant Halfday Tonics Inc. is a Delaware corporation with its principal offices located in Laurel Springs, New Jersey. Halfday does substantial business in New York, including in the Southern District of New York, by marketing, distributing, and selling the Products to consumers in this District. Halfday manufactures, markets, advertises, distributes, and sells the Products, and it controls their labeling, packaging, Nutrition Facts panels, website representations, and other marketing materials.

## JURISDICTION AND VENUE

16.    This Court has subject matter jurisdiction over this class action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). Plaintiff Kluge is a citizen of New York. Defendant Halfday Tonics Inc. is incorporated in Delaware and has its principal place of business in New Jersey. The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the proposed Class includes more than 100 members.

17.    Venue is proper in the Southern District of New York under 28 U.S.C.

§ 1391 because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District. Plaintiff resides in this District, purchased the Halfday Prebiotic Iced Tea variety pack while residing in this District, and the product was shipped to Plaintiff in New York, New York. Defendant also conducts substantial business in this District by marketing, distributing, and selling its ready-to-drink iced tea products to consumers located here.

## FACTUAL ALLEGATIONS

### A. The Products and Challenged Low-Sugar Representations

18.    The Products include, but are not limited to, Halfday Raspberry Iced Tea, Peach Iced Tea, Green Iced Tea, Lemon Iced Tea, Tropical Iced Tea, Sweet Iced Tea, Classic Half & Half Iced Tea & Lemonade, Watermelon Half & Half Iced Tea & Watermelon Lemonade, and any substantially similar Halfday iced tea flavor that Defendant represented as containing 3 grams, 3 to 5 grams, or similarly low amounts of sugar per can.

19.    The Defendant's challenged low-sugar representations concerning the Products were false or misleading. For instance, independent testing confirmed that Raspberry Iced Tea contained approximately 9.69 grams of sugar per 355 mL can despite being represented as containing only 3 grams of sugar per can. This tested example supports Plaintiff's allegation that the challenged representations were not an isolated advertising statement, but were part of a broader product-line labeling and marketing scheme. The precise sugar content, formulation, label-approval history, testing, and substantiation for each Product are within Defendant's possession, custody, and control and will be confirmed through discovery.

### B.  Halfday Represented the Products as Low-Sugar Beverages

20.    The Products were sold to consumers in individual cans and as part of Halfday variety packs, including the Halfday Prebiotic Iced Tea variety pack purchased by Plaintiff. The challenged representations were uniform or

substantially similar across the product line. Defendant represented that the Products contained only 3 grams, 3 to 5 grams, or similarly low amounts of sugar per can.

21.    For Raspberry Iced Tea, Defendant made the challenged representation prominently on the front of the can, where the product displayed a bright green callout stating "3g sugar" near the product's raspberry imagery.

22.    For Raspberry Iced Tea, Defendant repeated the same representation in the Nutrition Facts panel, which stated "Total Sugars 3g." Defendant made substantially similar low-sugar representations for the Products on their labels, Nutrition Facts panels, website, and other marketing materials.

23.    These representations were express, objective statements about the Products' sugar content. Reasonable consumers understood them to mean that each Product contained the amount of total sugar represented on its label and in its Nutrition Facts panel.

## C. Independent Testing Showed Raspberry Iced Tea Contained More Than Three Times the Represented Sugar

24.    Independent laboratory testing of Halfday Raspberry Iced Tea showed that it contained approximately 9.69 grams of sugar per 355 mL can, not the 3 grams represented on the front label and Nutrition Facts panel. This result rendered the challenged representations for Raspberry Iced Tea false and misleading.

25.    Raspberry Iced Tea therefore contained approximately 6.69 additional grams of sugar per can, more than three times the amount represented to consumers. Thus, consumers who purchased Raspberry Iced Tea believing they were receiving a low-sugar beverage did not receive the product Defendant promised.

## D. The Sugar Difference Was Material to Reasonable Consumers

26.    The difference between a Product's represented sugar content and a materially higher actual sugar content was material to reasonable consumers. For Raspberry Iced Tea, the difference between 3 grams of sugar and approximately

6

9.69 grams of sugar per can was substantial. Consumers purchase low-sugar beverages because sugar content affects how they compare products, evaluate healthfulness, manage dietary choices, and decide whether a beverage is worth the price charged.

27.    Defendant did not market the Products as ordinary sweetened iced teas. Defendant marketed the Products as low-sugar, low-calorie, better-for-you alternatives to traditional sugary sodas and sweetened iced teas. In that context, the amount of sugar in the Products was not a minor or technical detail. It was one of the Products' central selling points.

28.    Raspberry Iced Tea illustrates the materiality of the challenged representations. Reasonable consumers understand a beverage represented to contain only 3 grams of sugar per can to be materially different from a beverage containing approximately 9.69 grams of sugar per can. The undisclosed difference of approximately 6.69 grams of sugar per can deprived consumers of accurate information needed to decide whether to purchase the Product, how much to pay for it, and whether to consume it.

29.    Differences between the Products' represented and actual sugar content were especially material to consumers who monitor sugar, carbohydrates, calories, diabetes, prediabetes, insulin resistance, or blood glucose levels. Such consumers commonly rely on Nutrition Facts labels to monitor carbohydrate and sugar intake. The CDC explains that many people with diabetes count carbohydrates to make managing blood sugar easier, and that people who take mealtime insulin count carbohydrates to match their insulin dose to the carbohydrates in foods and drinks. [1]

---

[1] Centers for Disease Control and Prevention, Carb Counting, Diabetes, https://www.cdc.gov/diabetes/healthy-eating/carb-counting-manage-blood-sugar.html (last visited July 3, 2026).

30.    Defendant's low-sugar representations concerning the Products, including the "3g sugar" and "Total Sugars 3g" representations for Raspberry Iced Tea, therefore misled consumers about material product attributes. Had reasonable consumers known the Products' true sugar content, they would not have purchased the Products, or would have paid substantially less for them.

**E. Consumers Reasonably Trusted the Nutrition Facts Panel**

31.    The Nutrition Facts panel is not mere marketing copy. It is a federally mandated, standardized disclosure that has appeared on packaged foods and beverages for decades.[2] Congress enacted the Nutrition Labeling and Education Act of 1990 to require standardized nutrition labeling, and the FDA first issued regulations requiring the familiar Nutrition Facts label in 1993.[3] Since the 1990s, consumers have been taught to rely on the Nutrition Facts panel as a trustworthy source of basic nutritional information, including calories, carbohydrates, and sugar content.

32.    The purpose of the Nutrition Facts panel is to give consumers reliable, standardized, and comparable nutrition information so they can make informed purchasing and consumption decisions. Consumers reasonably understand statements on the Nutrition Facts panel differently from ordinary advertising because those statements appear in a legally required format, are regulated by federal law, and are presented as objective nutritional facts.

33.    Defendant exploited that trust. By representing in the Products' Nutrition Facts panels that the Products contained the declared low amounts of sugar, Defendant did more than make promotional low-sugar claims. For Raspberry Iced Tea, Defendant represented "Total Sugars 3g." Defendant placed its low-sugar

---

[2] Harvard T.H. Chan School of Public Health, The Nutrition Source, Understanding Food Labels, https://nutritionsource.hsph.harvard.edu/food-label-guide/ (last visited July 3, 2026).
[3] National Academies of Sciences, Engineering, and Medicine, *Front-of-Package Nutrition Rating Systems and Symbols: Promoting Healthier Choices* 154-55 (2012), https://www.ncbi.nlm.nih.gov/books/NBK209859/ (last visited July 3, 2026).

representations inside the very disclosure system consumers rely on to avoid being misled. That made the representations more credible, more material, and more likely to deceive reasonable consumers seeking healthier alternatives to traditional sugary sodas and sweetened beverages.

34.    Defendant's misconduct was especially harmful because the Nutrition Facts panel exists to prevent precisely this type of consumer deception. Consumers looking for lower-sugar products reasonably rely on the panel to compare beverages and make responsible choices. By misrepresenting the Products' sugar content in their Nutrition Facts panels, Defendant misused a legally mandated consumer-protection tool. The Raspberry Iced Tea, contained more than three times the represented amount of sugar.

35.    Plaintiff does not seek to impose any food-labeling requirement different from, or in addition to, federal law. Plaintiff's claims are based on Defendant's alleged failure to truthfully state the Products' sugar content and parallel federal requirements that Nutrition Facts declarations accurately state "Total Sugars" in grams per serving and not exceed the declared value beyond the tolerance allowed by 21 C.F.R. § 101.9(g).

**F.  Low Sugar Was Central to Halfday's Brand and the Products' Identity**

36.    Halfday's low-sugar representations were key to the Products' identity. They were central to Defendant's brand, product development, and marketing strategy. Halfday publicly positioned the Products as better-for-you alternatives to traditional sugary iced teas and sodas, repeatedly emphasizing low sugar, low calories, prebiotic fiber, and gut-health benefits.

37.    According to Halfday's public origin story, the brand was created to recreate nostalgic, classic iced tea flavors in a form that was more consistent with digestive wellness and lower sugar consumption. Halfday's founders publicly described the company as an effort to provide consumers with familiar iced tea

flavors through the Products without the sugar burden commonly associated with traditional commercial iced teas.

38.    Halfday's public statements and founder interviews show that the company repeatedly worked on and revised the Products' formulations, including sweetener systems, sugar levels, prebiotic ingredients, can size, flavor format, and shelf-stable packaging. Those public statements demonstrate that sugar content was a core product attribute that Defendant understood, controlled, and used to market the Products.

39.    Halfday also publicly promoted the Products as containing only 3 grams, 3 to 5 grams, or similarly low amounts of sugar, as well as low calories, real brewed tea, and prebiotic fiber. Its marketing compared the Products favorably against conventional iced teas with substantially higher sugar content. These claims were designed to reach health-conscious consumers who wanted the taste of classic iced tea without the high sugar content of traditional sweetened beverages.

40.    The challenged low-sugar representations therefore went to the heart of the Products' identity. Reasonable consumers did not view those representations as minor or technical nutrition details because the challenged low-sugar representations communicated a central promise that the Product was a low-sugar, better-for-you beverage.

**G. Halfday Knew or Should Have Known the True Sugar Content**

41.    Defendant's own public formulation history also shows that it had multiple opportunities to know the true sugar content of the Products before selling them to consumers. Defendant developed or approved the Products' formulas, selected their sweetening ingredients, controlled their prebiotic blends, determined their can sizes, created their Nutrition Facts panels, and placed low-sugar representations on their front labels and in marketing materials.

42.    Because Halfday's brand was built around the promise of lower sugar, Defendant knew or should have known that any material difference between the

Products' represented and actual sugar content was important to consumers. Consumers purchased the Products because they believed they were choosing low-sugar alternatives to traditional sugary iced teas and sodas. As alleged herein, they were not.

43.    Before the Products were sold to consumers, Defendant necessarily developed or approved their formulas, selected their ingredients, determined the amount of sweetening ingredients used in each serving, and created their Nutrition Facts panels and front-label sugar representations. Defendant therefore knew, or at minimum should have known, the Products' true sugar content before placing the challenged low-sugar representations on the cans and in the Nutrition Facts panels. For Raspberry Iced Tea, those representations included "3g sugar" and "Total Sugars 3g."

44.    The alleged misconduct could not have resulted from a consumer's misunderstanding. The challenged sugar representations were created by Defendant before sale, placed on Defendant's own packaging, repeated in federally regulated Nutrition Facts panels, and used as central marketing claims. If the Products contained materially more sugar than represented, then the misrepresentations arose from Defendant's own formulation, testing, labeling, quality-control, marketing, or approval processes.

45.    Defendant's knowledge or reckless disregard is further supported by the size of the discrepancy shown by the tested Raspberry Iced Tea. This was not a minor rounding issue or ordinary manufacturing variance. Defendant represented that Halfday Raspberry Iced Tea contained only 3 grams of sugar per 355 mL can, while independent testing showed approximately 9.69 grams of sugar per 355 mL can. That result is more than three times the represented amount and approximately 6.69 grams above the declared sugar content. Because Defendant formulated the Products around sugar and sweetener levels, marketed low sugar as a core product attribute, and necessarily calculated Nutrition Facts values before label approval,

Defendant knew or recklessly disregarded that the Products' true sugar content did not match the challenged low-sugar representations.

46.     Defendant had multiple opportunities to know and correct the truth before consumers purchased the Products. Defendant could have calculated the sugar content from the formulas, verified it through ingredient specifications, confirmed it through laboratory testing, reviewed it before approving the labels, and monitored it through production and quality-control records. Despite those opportunities, Defendant continued representing that the Products contained only the low amounts of sugar stated on their labels and in their marketing.

47.     By placing false low-sugar claims both on the Products' front labels and in their Nutrition Facts panels, Defendant allegedly converted false marketing messages into what appeared to consumers to be objective, standardized, and legally regulated nutrition facts. For Raspberry Iced Tea, Defendant placed "3g sugar" on the front label and "Total Sugars 3g" in the Nutrition Facts panel. That is what made the deception especially powerful: consumers were not merely relying on advertising puffery, they were relying on a nutrition disclosure system designed to provide accurate information at the point of purchase.

**H. Plaintiff Relied on Halfday's Sugar Representations and Was Injured**

48.     Plaintiff Robert Kluge purchased a Halfday Prebiotic Iced Tea variety pack through Amazon on or about May 14, 2024, for personal, family, or household use. The variety pack included Halfday Raspberry Iced Tea. The order confirmation identifies the product as "HALFDAY Prebiotic Iced Tea," quantity one, with an order total of $35.99, and reflects that the product was shipped to Plaintiff in New York, New York.

49.     Before purchasing the product, Plaintiff reviewed the Amazon product page for the Halfday Prebiotic Iced Tea variety pack. The Amazon product page displayed product images and marketing representations for the variety pack, including images of the Raspberry Iced Tea flavor can showing the front-label "3g

sugar" representation. Plaintiff saw and relied on the "3g sugar" representation before purchasing the product.

50.    The same sugar representation also appeared in the product's Nutrition Facts panel, which stated "Total Sugars 3g." After receiving the product, Plaintiff saw the Raspberry Iced Tea can and the Nutrition Facts panel, which confirmed the same 3-gram sugar representation that Defendant used to market, label, and sell the product.

51.    Plaintiff also saw and relied on Defendant's low-sugar and low-calorie representations concerning the Products. These representations were important to Plaintiff and were among the most important factors driving his decision to purchase the variety pack. Plaintiff reasonably believed, based on Defendant's Amazon listing, product imagery, and marketing, that the Products in the variety pack, including Halfday Raspberry Iced Tea, were low-sugar, low-calorie beverages and healthier alternatives to traditional sugary sodas and sweetened iced teas. Had Plaintiff known that Halfday Raspberry Iced Tea and the other Products contained materially more sugar than Defendant represented, he would not have purchased the variety pack, or, at a minimum, would have paid substantially less for it.

52.    Plaintiff was injured because he did not receive the product he paid for. Plaintiff paid for a variety pack containing Raspberry Iced Tea, a Product represented to contain only 3 grams of sugar per can, but received a Product that contained materially more sugar than represented. As a result, Plaintiff lost the benefit of his bargain.

53.    Plaintiff also paid a price premium attributable to Defendant's low-sugar and low-calorie representations concerning the Products. The represented low-sugar attributes had independent economic value to Plaintiff and to reasonable consumers seeking healthier alternatives to traditional sweetened beverages. Because Plaintiff purchased a variety pack that included Halfday Raspberry Iced

Tea, the price Plaintiff paid included payment for Raspberry Iced Tea and for the represented low-sugar attributes associated with the Products.

54.    Plaintiff's damages include, among other things, the difference between the price paid and the value of the Products as actually received, the price premium attributable to Defendant's false low-sugar representations concerning the Products, restitution of money wrongfully obtained, disgorgement of ill-gotten gains where available, statutory damages, injunctive relief, and all other relief permitted by law.

## I.  Plaintiff and the Class Paid a Price Premium and Lost the Benefit of Their Bargain

55.    Plaintiff and Class members paid for the Products, including Raspberry Iced Tea sold individually and as part of Halfday variety packs, believing that the Products contained only 3 grams, 3 to 5 grams, or similarly low amounts of sugar per can. Those representations were part of the basis of the bargain. Consumers did not pay merely for any iced tea. They paid for Products represented to be low in sugar, low in calories, and healthier alternatives to traditional sugary sodas and sweetened iced teas.

56.    Plaintiff and Class members did not receive the Products Defendant promised. Instead of receiving Products containing the low amounts of sugar represented on their labels and in their marketing, they received Products containing materially more sugar than represented. As a result, Plaintiff and Class members lost the benefit of their bargain.

57.    The represented low-sugar attributes had independent economic value. Reasonable consumers are willing to pay more for beverages they believe contain less sugar, fewer calories, and healthier ingredients than competing sweetened beverages. Defendant's low-sugar representations therefore allowed Defendant to

charge, maintain, or obtain a price premium that it could not have obtained had the Products been truthfully labeled and advertised.

58.     Because Plaintiff purchased a Halfday Prebiotic Iced Tea variety pack that included Halfday Raspberry Iced Tea, the price Plaintiff paid included payment for one or more of the Products and for the represented low-sugar attributes associated with them. Plaintiff was injured because the variety pack included a Product that was not as represented and was worth less than the Product Defendant promised.

59.     Plaintiff and Class members were injured at the time of purchase. Had they known that the Products contained materially more sugar than represented, they would not have purchased the Products, or would have paid substantially less for them.

60.     Plaintiff's and Class members' damages include, among other things, the difference between the price paid and the value of the Products as actually received, the price premium attributable to Defendant's false low-sugar representations concerning the Products, restitution of money wrongfully obtained, disgorgement of ill-gotten gains where available, statutory damages, injunctive relief, and all other relief permitted by law.

## J. Halfday's Misrepresentations Distorted the Marketplace

61.     Defendant's conduct harmed not only consumers, but also the marketplace itself. The Federal Trade Commission has recognized that deceptive and unsubstantiated advertising undermines the quality of information available in the marketplace, and that marketers who disseminate false advertising obtain an unfair competitive advantage.[4] Nutrition labeling allows consumers to compare

---

[4] Christine A. Varney, Comm'r, Fed. Trade Comm'n, Advertising and Unfair Competition: FTC Enforcement, Public Statement at the ALI-ABA Eleventh Annual Advanced Course on Product Distribution and Marketing (Jan. 17, 1996) ("Deceptive and unsubstantiated advertising

competing beverages on equal terms. When one company truthfully discloses that its beverages contain more sugar, while another falsely represents that its Products contain only 3 grams, 3 to 5 grams, or similarly low amounts of sugar, the dishonest company gains an unfair competitive advantage. That deceptive advantage captures health-conscious consumers who are specifically trying to avoid higher-sugar drinks, while honest competitors lose sales for accurately disclosing the contents of their products.

62.     This type of deception corrupts competition on the merits.[5] Companies that follow the rules must compete based on the actual nutritional content of their products. They must either make a genuinely lower-sugar beverage, accurately disclose a higher-sugar product, or accept the market consequences of telling consumers the truth. Defendant, by contrast, allegedly claimed the market advantage of low-sugar Products without providing Products that matched those representations. That is not fair competition. It is cheating the marketplace by using false nutritional profiles to win sales that should have gone to products honestly labeled and sold.

63.     Defendant's misrepresentation also undermines consumer trust in the Nutrition Facts panel itself. The panel is meant to create a standardized, reliable way for consumers to compare the Products and competing beverages. If companies can falsely state sugar content in that federally mandated panel, consumers cannot reliably distinguish between Products that are genuinely low in sugar and Products that merely claim to be. That injury extends beyond a single purchase because it

---

undermines the quality of information available in the marketplace, and marketers who disseminate false advertising obtain an unfair competitive advantage."), https://www.ftc.gov/news-events/news/speeches/advertising-unfair-competition-ftc-enforcement (last visited July 3, 2026).

[5] Michael A. Carrier & Rebecca Tushnet, *An Antitrust Framework for False Advertising*, 106 Iowa L. Rev. 1841, 1852-53, 1873-74 (2021), https://ilr.law.uiowa.edu/sites/ilr.law.uiowa.edu/files/2023-02/Carrier_Tushnet.pdf (last visited July 3, 2026).

weakens the integrity of the labeling system that honest businesses depend on to compete fairly.

64.    As a result, Defendant's alleged misconduct allowed it to reap ill-gotten gains from consumers seeking healthier alternatives, while diverting sales away from competitors that accurately labeled their products and played by the rules.

## CLASS ACTION ALLEGATIONS

65.    Plaintiff brings this action on his own behalf and pursuant to Federal Rule of Civil Procedure 23. Plaintiff intends to seek certification of classes defined as follows (collectively "the Class" or "the Class members"):

The New York Class: All persons residing in the State of New York who purchased any Halfday ready-to-drink prebiotic iced tea beverage represented as containing 3 grams, 3 to 5 grams, or similarly low amounts of sugar per can, including but not limited to Raspberry Iced Tea, Peach Tea, Green Tea, Lemon Tea, Tropical Tea, Sweet Tea, Classic Half & Half, and Watermelon Half & Half, during the period beginning four years before the filing of the original Complaint through the date of class certification.

The National Class: All persons in the United States who purchased any Halfday ready-to-drink prebiotic iced tea beverage represented as containing 3 grams, 3 to 5 grams, or similarly low amounts of sugar per can, including but not limited to Raspberry Iced Tea, Peach Tea, Green Tea, Lemon Tea, Tropical Tea, Sweet Tea, Classic Half & Half, and Watermelon Half & Half, during the period beginning four years before the filing of the original Complaint through the date of class certification.

66.    Excluded from the Class are: (a) Defendant, including any entity in which Defendant has a controlling interest, any parent or subsidiary of Defendant, or any entity controlled by Defendant; (b) Defendant's officers, directors, employees, agents, and legal representatives; (c) any judge assigned to this case and court personnel, together with members of their immediate families; and (d) any

person who validly requests exclusion from the Class. Plaintiff reserves the right to amend the Class definitions or seek certification of claim-specific subclasses based on applicable limitations periods, purchase state, governing law, retailer, Product flavor, label version, formulation, and proof developed in discovery, if further investigation, discovery, or rulings by the Court show that modification is appropriate.

67.    *Numerosity*. The members of the Class are so numerous that joinder of all Class members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, the Products were sold to consumers in New York and throughout the United States through Amazon and other retailers, including individually and as part of Halfday variety packs. Given Defendant's distribution, marketing, and sales of the Products, it stands to reason that the Class includes at least hundreds, and likely thousands, of consumers. Class members are readily identifiable from information and records in Defendant's possession, custody, or control, including sales data, retailer records, distributor records, online order records, shipping records, and customer account information.

68.    *Commonality and Predominance*. There are questions of law and fact common to Class members, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

      a. Whether Defendant represented that the Products contained 3 grams, 3 to 5 grams, or similarly low amounts of sugar per can;

      b. Whether Defendant represented on the Products' front labels, Nutrition Facts panels, website, and marketing materials that the Products were low-sugar beverages;

      c. Whether Defendant's low-sugar representations, including "3g sugar" and "Total Sugars 3g" for Raspberry Iced Tea, were false, deceptive, or misleading to reasonable consumers;

d. Whether the Products contained materially more sugar than Defendant represented;

e. Whether, by way of example, independent laboratory testing showed that Halfday Raspberry Iced Tea contained approximately 9.69 grams of sugar per can;

f. Whether the difference between the represented sugar content and the actual sugar content was material to reasonable consumers;

g. Whether reasonable consumers relied on Defendant's sugar representations when deciding whether to purchase the Products;

h. Whether Defendant marketed the Products as better-for-you alternatives to traditional sugary sodas and sweetened iced teas;

i. Whether Defendant's low-sugar representations allowed Defendant to charge, maintain, or obtain a price premium for the Products;

j. Whether Plaintiff and Class members lost the benefit of their bargain because the Products contained materially more sugar than represented;

k. Whether Defendant knew or should have known the true sugar content of the Products before marketing, labeling, and selling them;

l. Whether Defendant controlled the Products' formulas, labeling, packaging, Nutrition Facts panels, website representations, and marketing materials;

m. Whether Defendant's conduct violated New York General Business Law §§ 349 and 350;

n. The nature of the relief, including equitable relief, to which Plaintiff and Class members are entitled; and

o. Whether Plaintiff and Class members are entitled to damages, restitution, disgorgement, statutory damages, and/or injunctive

relief.

69. *Typicality.* Plaintiff's claims are typical of those of other Class members because Plaintiff, like the other Class members, purchased a Product sold under Defendant's uniform or substantially similar low-sugar labeling and marketing scheme. Plaintiff purchased a variety pack that included Halfday Raspberry Iced Tea, which was represented as containing only 3 grams of total sugar per can but contained materially more sugar than represented.

70. *Adequacy of Representation.* Plaintiff will fairly and adequately represent and protect the interests of the Class members. Plaintiff has retained competent counsel experienced in litigation of class actions, including consumer class actions, and Plaintiff intends to prosecute this action vigorously. Plaintiff and Class members have a unified and non-conflicting interest in pursuing the same claims and obtaining the same relief. Therefore, all Class members will be fairly and adequately represented by Plaintiff and his counsel.

71. *Superiority of Class Action.* A class action is superior to other available methods for the fair and efficient adjudication of the claims alleged in this action. The adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudications of the asserted claims. There will be no difficulty in the management of this action as a class action, and the disposition of the claims of the Class members in a single action will provide substantial benefits to all parties and to the Court. Damages for any individual Class member are likely insufficient to justify the cost of individual litigation so that, in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go un-remedied.

72. Class certification is also appropriate because Defendant has acted or refused to act on grounds generally applicable to the Class members, such that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

## FIRST CAUSE OF ACTION

### (Fraud)

### (All Classes)

73.    Plaintiff repeats and incorporates herein by reference each and every allegation above as if set forth fully herein.

74.    Defendant made affirmative statements on the Products' front labels, Nutrition Facts panels, website, and uniform marketing materials representing that the Products contained only 3 grams, 3 to 5 grams, or similarly low amounts of sugar per can and were low-sugar, low-calorie beverages. For Raspberry Iced Tea, by way of example, these statements included the front-label representation "3g sugar," the Nutrition Facts panel representation "Total Sugars 3g," and the representation that the Product contained 30 calories per can. These are the "Challenged Representations."

75.    The Challenged Representations were false or misleading. Upon information and belief, the Products contained materially more sugar than Defendant represented. By way of example, independent laboratory testing showed that Halfday Raspberry Iced Tea contained approximately 9.69 grams of sugar per 355 mL can, materially more than three times the amount represented by Defendant.

76.    When making the Challenged Representations, Defendant knew they were false or acted with reckless disregard for the truth, intending to induce consumers to purchase the Products at the prices charged. Defendant developed or approved the Products' formulas, selected their ingredients and sweetening ingredients, controlled their Nutrition Facts panels, approved their labels and packaging, and marketed the Products around a low-sugar profile. Defendant possessed or had access to information showing the Products' true sugar content, including formulation records, ingredient specifications, nutrition calculations, laboratory testing, quality-control records, production records, batch records, label approval records, and records concerning the Products' sugar and sweetener

profiles.

77. Defendant's knowledge or reckless disregard is further supported by the size of the discrepancy shown by Raspberry Iced Tea. This was not a minor rounding issue or ordinary manufacturing variance. Defendant represented that Halfday Raspberry Iced Tea contained only 3 grams of sugar per 355 mL can, while independent testing showed approximately 9.69 grams of sugar per 355 mL can. That result is more than three times the represented amount and approximately 6.69 grams above the declared sugar content. Because Defendant formulated the Products around sugar and sweetener levels, marketed low sugar as a core product attribute, and necessarily calculated Nutrition Facts values before label approval, Defendant knew or recklessly disregarded that the Products' true sugar content did not match the Challenged Representations.

78. Defendant intended that consumers, including Plaintiff Kluge, rely on the Challenged Representations and omissions to purchase the Products and to pay the prices charged, including when the Products, such as Raspberry Iced Tea, were sold as part of Halfday variety packs.

79. The Challenged Representations include uniform or substantially similar statements that the Products contained only 3 grams, 3 to 5 grams, or similarly low amounts of sugar per can and were low-sugar, low-calorie beverages. For Raspberry Iced Tea, by way of example, the Challenged Representations included the front-label statement "3g sugar" and the Nutrition Facts panel statement "Total Sugars 3g." The omitted fact is that the Products contained materially more sugar than represented, including approximately 9.69 grams of sugar per 355 mL can for Raspberry Iced Tea according to independent laboratory testing.

80. The Challenged Representations and omissions occurred during the Class period, including on or about May 14, 2024, when Plaintiff Kluge purchased a Halfday Prebiotic Iced Tea variety pack through Amazon. The variety pack

included Halfday Raspberry Iced Tea.

81. The Challenged Representations appeared on the Products' cans, including on their front labels and Nutrition Facts panels, and in Defendant's online and uniform marketing materials. For Raspberry Iced Tea, the representations included "3g sugar" on the front label and "Total Sugars 3g" in the Nutrition Facts panel. Plaintiff purchased the Halfday Prebiotic Iced Tea variety pack through Amazon while residing in New York, New York, and the product was shipped to Plaintiff in New York, New York.

82. The Challenged Representations communicated that the Products contained only the low amounts of sugar stated on their labels and in their marketing. Those statements were false or misleading because the Products contained materially more sugar than represented. Defendant's omission of the true sugar content rendered the Products' front-label, Nutrition Facts panel, website, and marketing representations misleading. No clear and conspicuous disclosure corrected the false impression concerning the Products' sugar content.

83. Plaintiff saw and relied on Defendant's front-label "3g sugar" representation before purchasing the Halfday Prebiotic Iced Tea variety pack through Amazon. After receiving the product, Plaintiff saw the Raspberry Iced Tea can and the Nutrition Facts panel, which confirmed the same 3-gram sugar representation, including the statement "Total Sugars 3g." Plaintiff relied on Defendant's low-sugar and low-calorie representations in deciding to purchase the product. Had Plaintiff known that Halfday Raspberry Iced Tea contained materially more sugar than represented, he would not have purchased the product, or, at a minimum, would have paid substantially less for it.

84. Plaintiff Kluge's reliance was reasonable. The Challenged Representations were express, objective sugar-content statements appearing on the Products' front labels and in federally regulated Nutrition Facts panels. Reasonable consumers are entitled to rely on those representations when deciding whether to

23

purchase a beverage and how much to pay for it.

85.    Class members were exposed to the same or substantially similar Challenged Representations on the Products' labels, Nutrition Facts panels, product listings, website, and uniform marketing materials. Class members reasonably understood those representations to mean that the Products contained only the low amounts of sugar stated on their labels and in their marketing. In purchasing the Products, Class members relied on the Challenged Representations or, at minimum, were entitled to presume that Defendant's express and federally regulated sugar-content statements were truthful and accurate.

86.    As a direct and proximate result of Defendant's fraud, Plaintiff Kluge suffered damages. Plaintiff purchased a Halfday Prebiotic Iced Tea variety pack through Amazon on or about May 14, 2024, for an order total of $35.99. The variety pack included Halfday Raspberry Iced Tea. Plaintiff paid for a Product represented to contain only 3 grams of total sugar per can, but received a Product containing materially more sugar than represented.

87.    Plaintiff Kluge paid a price premium attributable to Defendant's false low-sugar and low-calorie representations concerning the Products and lost the benefit of his bargain. Plaintiff's damages include, among other things, the difference between the price paid and the value of the Products as actually received, the price premium attributable to the false low-sugar representations, and any other loss proximately caused by Defendant's fraud.

88.    Class members were injured in the same manner as Plaintiff because they paid for Products represented as containing only 3 grams, 3 to 5 grams, or similarly low amounts of sugar per can, but received Products containing materially more sugar than represented. Class members paid a price premium attributable to the Challenged Representations and lost the benefit of their bargains.

89.    Plaintiff Kluge seeks rescission or a reduction of the price, damages measured by the difference between the price paid and the value received,

restitution, disgorgement where available, punitive damages for Defendant's willful and wanton misconduct, pre- and post-judgment interest, costs, attorneys' fees where available, and all further relief the Court deems just and proper.

## SECOND CAUSE OF ACTION

### (Fraudulent Concealment and Omission)

### (All Classes)

90.    Plaintiff repeats and incorporates herein by reference each and every allegation above as if set forth fully herein.

91.    Defendant made affirmative statements on the Products' front labels, Nutrition Facts panels, website, and uniform marketing materials representing that the Products contained only 3 grams, 3 to 5 grams, or similarly low amounts of sugar per can and were low-sugar, low-calorie beverages. For Raspberry Iced Tea, by way of example, these statements included the front-label representation "3g sugar," the Nutrition Facts panel representation "Total Sugars 3g," and the representation that the Product contained 30 calories per can. These are the "Challenged Representations."

92.    Defendant omitted and concealed material facts necessary to make the Challenged Representations not misleading. The omitted facts include that the Products did not contain only the low amounts of sugar represented on their labels and in their marketing, and instead contained materially more sugar than Defendant represented.

93.    A duty to speak arose because Defendant chose to speak about the Products' sugar content on their front labels, in their Nutrition Facts panels, on its website, and in uniform marketing materials. By representing that the Products contained only 3 grams, 3 to 5 grams, or similarly low amounts of sugar per can, Defendant created misleading half-truths unless it also disclosed that the Products contained materially more sugar than represented.

94.    A duty to speak also arose under the special facts doctrine because

Defendant possessed superior and exclusive knowledge of material facts not readily available to consumers. Defendant knew or should have known the Products' true sugar content because Defendant developed or approved their formulas, selected their ingredients and sweetening ingredients, controlled their Nutrition Facts panels, approved their labels and packaging, and marketed the Products around a low-sugar profile.

95.    Defendant knew the omitted facts or acted with reckless disregard for the truth and intentionally concealed those facts to obtain an unjust advantage and to cause consumers to purchase the Products at the prices charged. Defendant possessed or had access to information showing the Products' true sugar content, including formulation records, ingredient specifications, nutrition calculations, laboratory testing, quality-control records, production records, batch records, label approval records, and records concerning the Products' sugar and sweetener profiles.

96.    Defendant's knowledge or reckless disregard is further supported by the size of the discrepancy shown by Raspberry Iced Tea. This was not a minor rounding issue or ordinary manufacturing variance. Defendant represented that Halfday Raspberry Iced Tea contained only 3 grams of sugar per 355 mL can, while independent testing showed approximately 9.69 grams of sugar per 355 mL can. That result is more than three times the represented amount and approximately 6.69 grams above the declared sugar content. Because Defendant formulated the Products around sugar and sweetener levels, marketed low sugar as a core product attribute, and necessarily calculated Nutrition Facts values before label approval, Defendant knew or recklessly disregarded that the Products' true sugar content did not match the Challenged Representations.

97.    Defendant intended that consumers, including Plaintiff Kluge, rely on the misleading half-truth created by the Challenged Representations and Defendant's omission of the true sugar content. Defendant intended that consumers

purchase the Products and pay the prices charged, including when Products such as Raspberry Iced Tea were sold as part of Halfday variety packs.

98. Defendant made and approved the Challenged Representations and withheld the omitted facts. Defendant controlled the Products' formulas, labeling, packaging, Nutrition Facts panels, website representations, and marketing materials, and therefore controlled both what consumers were told and what consumers were not told.

99. The Challenged Representations include uniform or substantially similar representations that the Products contained only 3 grams, 3 to 5 grams, or similarly low amounts of sugar per can and were low-sugar, low-calorie beverages. For Raspberry Iced Tea, by way of example, the Challenged Representations included the front-label statement "3g sugar" and the Nutrition Facts panel statement "Total Sugars 3g." The omitted fact is that the Products contained materially more sugar than represented, including approximately 9.69 grams of sugar per 355 mL can for Raspberry Iced Tea according to independent laboratory testing.

100. Defendant's omissions occurred throughout the Class period, including on or about May 14, 2024, when Plaintiff Kluge purchased a Halfday Prebiotic Iced Tea variety pack through Amazon. The variety pack included Halfday Raspberry Iced Tea.

101. The Challenged Representations appeared on the Products' cans, including on their front labels and Nutrition Facts panels, and in Defendant's online and uniform marketing materials. For Raspberry Iced Tea, the representations included "3g sugar" on the front label and "Total Sugars 3g" in the Nutrition Facts panel. Plaintiff purchased the Halfday Prebiotic Iced Tea variety pack through Amazon while residing in New York, New York, and the product was shipped to Plaintiff in New York, New York.

102. Defendant represented that the Products contained only the low

amounts of sugar stated on their labels and in their marketing, but failed to disclose that the Products contained materially more sugar than represented. Defendant's silence about the Products' true sugar content rendered the front-label, Nutrition Facts panel, website, and marketing representations misleading. No clear and conspicuous disclosure corrected the false impression concerning the Products' sugar content.

103. Plaintiff saw and relied on Defendant's front-label "3g sugar" representation before purchasing the Halfday Prebiotic Iced Tea variety pack through Amazon. After receiving the product, Plaintiff saw the Raspberry Iced Tea can and the Nutrition Facts panel, which confirmed the same 3-gram sugar representation, including the statement "Total Sugars 3g." Plaintiff relied on Defendant's low-sugar and low-calorie representations in deciding to purchase the product. Had Plaintiff known that Halfday Raspberry Iced Tea contained materially more sugar than represented, he would not have purchased the product, or, at a minimum, would have paid substantially less for it.

104. Class members were not provided any clear or conspicuous disclosure of the Products' true sugar content before purchase. Defendant's omission of that information rendered its affirmative low-sugar representations misleading and caused Class members to purchase the Products under the mistaken belief that the Products contained only the low amounts of sugar represented.

105. Plaintiff Kluge relied on the omission and the misleading half-truth created by Defendant's Challenged Representations. Plaintiff believed that Halfday Raspberry Iced Tea contained only 3 grams of total sugar per can and was a low-sugar, low-calorie beverage. Had Plaintiff known the truth, namely that the product contained materially more sugar than represented, he would not have purchased the product, or, at a minimum, would have paid substantially less for it.

106. Plaintiff Kluge relied on the misleading half-truth created by Defendant's Challenged Representations and Defendant's omission of the true

28

sugar content. Plaintiff believed that Halfday Raspberry Iced Tea contained only 3 grams of total sugar per can and was a low-sugar, low-calorie beverage. Plaintiff was not provided any clear disclosure before purchase that the product contained materially more sugar than represented.

107. As a direct and proximate result of Defendant's fraudulent concealment and omission, Plaintiff Kluge suffered damages. Plaintiff purchased a Halfday Prebiotic Iced Tea variety pack through Amazon on or about May 14, 2024, for an order total of $35.99. The variety pack included Halfday Raspberry Iced Tea. Plaintiff paid for a Product represented to contain only 3 grams of total sugar per can, but received a Product containing materially more sugar than represented.

108. Plaintiff Kluge paid a price premium attributable to Defendant's false low-sugar and low-calorie representations concerning the Products and lost the benefit of his bargain. Plaintiff's damages include, among other things, the difference between the price paid and the value of the Products as actually received, the price premium attributable to the false low-sugar representations, and any other loss proximately caused by Defendant's fraudulent concealment and omission.

109. Class members suffered the same type of economic injury as Plaintiff. They paid for Products that were materially different from the Products represented, paid a price premium attributable to Defendant's low-sugar representations, and lost the benefit of their bargains.

110. Plaintiff Kluge seeks rescission or a reduction of the price, compensatory damages, restitution, disgorgement where available, punitive damages for Defendant's willful and wanton misconduct, pre- and post-judgment interest, costs, attorneys' fees where available, and all further relief the Court deems just and proper.

**THIRD CAUSE OF ACTION**

**(Negligent Misrepresentation (pled in alternative to fraud))**

**(All Classes)**

111.   Plaintiff repeats and incorporates herein by reference each and every allegation above as if set forth fully herein.

112.   Defendant had a duty to use reasonable care in communicating information about the Products' sugar content to consumers. Defendant, in the course of its business, possessed superior and specialized knowledge about the Products' formulas, ingredients, sweetening ingredients, sugar content, Nutrition Facts panels, labeling, packaging, and marketing claims. Defendant communicated that information directly to consumers through uniform product labeling, federally regulated Nutrition Facts panels, website representations, and marketing materials, intending that consumers rely on those representations when deciding whether to purchase the Products and how much to pay.

113.   A special or privity-like relationship existed for purposes of this claim because Defendant supplied specific, factual nutrition information to a known and intended class of end users, including Plaintiff Kluge, for the serious purpose of allowing consumers to evaluate the Products' nutritional content before purchase. Defendant knew or should have known that consumers would rely on the challenged low-sugar representations because sugar content is a material purchasing consideration for consumers seeking low-sugar, low-calorie, better-for-you beverages. For Raspberry Iced Tea, those representations included "3g sugar" and "Total Sugars 3g."

114.   Defendant's peculiar and superior knowledge of the Products' true sugar content further supports the duty. Consumers could not reasonably verify the Products' true sugar content before purchase. By contrast, Defendant controlled the Products' formulas, selected their sweetening ingredients, approved their Nutrition Facts panels, controlled their labeling and packaging, and had the ability to calculate, test, verify, and monitor the Products' sugar content before making the Challenged Representations.

115.   Defendant made the Challenged Representations without reasonable

30

care or competence to verify their truth. Defendant should have known that the representations were false or misleading based on information available to it, including formulation records, ingredient specifications, nutrition calculations, laboratory testing, quality-control records, production records, batch records, label approval records, and records concerning the Products' sugar and sweetener profiles.

116. Defendant intended, expected, or had reason to expect that consumers, including Plaintiff Kluge, would rely on the Challenged Representations in deciding whether to purchase the Products and how much to pay for them, including when Products such as Raspberry Iced Tea were sold as part of Halfday variety packs.

117. Class members were intended recipients of the same or substantially similar factual nutrition representations. Defendant intended, expected, or had reason to expect that Class members would rely on those representations when deciding whether to purchase the Products and how much to pay for them, and Class members reasonably did so.

118. Plaintiff saw and relied on Defendant's front-label "3g sugar" representation before purchasing the Halfday Prebiotic Iced Tea variety pack through Amazon. After receiving the product, Plaintiff saw the Raspberry Iced Tea can and the Nutrition Facts panel, which confirmed the same 3-gram sugar representation, including the statement "Total Sugars 3g." Plaintiff relied on Defendant's low-sugar and low-calorie representations in deciding to purchase the product. Had Plaintiff known that Halfday Raspberry Iced Tea contained materially more sugar than represented, he would not have purchased the product, or, at a minimum, would have paid substantially less for it.

119. Plaintiff's reliance was reasonable because sugar content was material to his purchase decision and Defendant's representations were specific, factual nutrition representations rather than vague advertising statements.

120. Defendant's representations were false and misleading. Upon

information and belief, the Products contained materially more sugar than represented. By way of example, independent laboratory testing showed that Halfday Raspberry Iced Tea contained approximately 9.69 grams of sugar per 355 mL can, not the 3 grams represented on the front label and Nutrition Facts panel.

121. As a direct and proximate result of Defendant's negligent misrepresentations, Plaintiff Kluge suffered pecuniary loss. Plaintiff purchased a Halfday Prebiotic Iced Tea variety pack through Amazon on or about May 14, 2024, for an order total of $35.99. The variety pack included Halfday Raspberry Iced Tea. Plaintiff paid for a Product represented to contain only 3 grams of sugar per can, but received a Product containing materially more sugar than represented.

122. Plaintiff Kluge paid a price premium attributable to Defendant's false low-sugar and low-calorie representations concerning the Products and lost the benefit of his bargain. Plaintiff's damages include, among other things, the difference between the price paid and the value of the Products as actually received, the price premium attributable to the false low-sugar representations, and other out-of-pocket losses proximately caused by Defendant's negligent misrepresentations.

123. Class members suffered pecuniary losses of the same nature as Plaintiff, including payment of a price premium, loss of the benefit of their bargains, and the difference between the prices paid and the value of the Products actually received.

124. Plaintiff seeks damages, restitution, pre- and post-judgment interest, costs, attorneys' fees where available, and all other relief allowed by law.

## FOURTH CAUSE OF ACTION
### (Deceptive Acts and Practices; N.Y. Gen. Bus. Law § 349)
### (New York Class)

125. Plaintiff repeats and incorporates herein by reference each and every allegation above as if set forth fully herein.

126. Defendant labeled, marketed, advertised, distributed, and sold the

32

Products to consumers in New York, including through Amazon and other retailers. Defendant's conduct was consumer-oriented and occurred in trade or commerce.

127. Defendant uniformly or substantially similarly represented that the Products contained only 3 grams, 3 to 5 grams, or similarly low amounts of sugar per can. These representations appeared on the Products' front labels and in their Nutrition Facts panels. For Raspberry Iced Tea, by way of example, the representations included "3g sugar" on the front label and "Total Sugars 3g" in the Nutrition Facts panel. Defendant also marketed the Products as low-sugar and low-calorie beverages through its website and other marketing representations.

128. Defendant's representations were materially misleading to reasonable consumers. Reasonable consumers understood the Challenged Representations to mean that each Product contained only the low amount of sugar stated on its label and in its marketing. Upon information and belief, the Products contained materially more sugar than Defendant represented. By way of example, independent laboratory testing showed that Halfday Raspberry Iced Tea contained approximately 9.69 grams of sugar per 355 mL can, materially more than Defendant represented.

129. Defendant's deceptive conduct was material because sugar content is important to consumers purchasing beverages, especially consumers seeking low-sugar, low-calorie, better-for-you alternatives to traditional sugary sodas and sweetened iced teas. Defendant's low-sugar representations concerning the Products were likely to mislead reasonable consumers acting reasonably under the circumstances.

130. Plaintiff Kluge purchased a Halfday Prebiotic Iced Tea variety pack through Amazon on or about May 14, 2024, for an order total of $35.99. The variety pack included Halfday Raspberry Iced Tea. Plaintiff saw and relied on Defendant's front-label "3g sugar" representation before purchasing the Halfday Prebiotic Iced Tea variety pack through Amazon. After receiving the product, Plaintiff saw the

Raspberry Iced Tea can and the Nutrition Facts panel, which confirmed the same 3-gram sugar representation, including the statement "Total Sugars 3g." Plaintiff relied on Defendant's low-sugar and low-calorie representations in deciding to purchase the product. Had Plaintiff known that Halfday Raspberry Iced Tea contained materially more sugar than represented, he would not have purchased the product, or, at a minimum, would have paid substantially less for it.

131.   Defendant's deceptive acts and practices caused Plaintiff and Class members actual injury. Plaintiff and Class members paid for Products represented as containing only 3 grams, 3 to 5 grams, or similarly low amounts of sugar per can, but received Products containing materially more sugar than represented. Plaintiff and Class members lost the benefit of their bargains and paid price premiums attributable to Defendant's false low-sugar and low-calorie representations concerning the Products.

132.   Plaintiff and the Class seek actual damages or statutory damages of fifty dollars per violation, whichever is greater, treble damages up to one thousand dollars for Defendant's willful or knowing violations, reasonable attorneys' fees, costs, injunctive relief, and all other relief permitted under N.Y. Gen. Bus. Law § 349(h).

**FIFTH CAUSE OF ACTION**

**(False Advertising; N.Y. Gen. Bus. Law § 350)**

**(New York Class)**

133.   Plaintiff repeats and incorporates herein by reference each and every allegation above as if set forth fully herein.

134.   Defendant engaged in false advertising within the meaning of N.Y. Gen. Bus. Law § 350 by making materially false and misleading statements about the Products in consumer-facing advertising, labeling, packaging, website representations, and marketing materials.

135.   Defendant advertised the Products as containing only 3 grams, 3 to 5

grams, or similarly low amounts of sugar per can. For Raspberry Iced Tea, by way of example, these advertising statements included the front-label representation "3g sugar," the Nutrition Facts panel representation "Total Sugars 3g," and substantially similar low-sugar and low-calorie representations made on Defendant's website and in other marketing materials.

136. Defendant's advertising was false and misleading in a material respect. Reasonable consumers understood the Challenged Representations to mean that each Product contained only the low amount of sugar stated on its label and in its marketing. Upon information and belief, the Products contained materially more sugar than Defendant advertised. By way of example, independent laboratory testing showed that Halfday Raspberry Iced Tea contained approximately 9.69 grams of sugar per 355 mL can, materially more than Defendant advertised.

137. Defendant's false advertising was consumer-oriented and directed to the public at large, including consumers in New York. Defendant disseminated the challenged advertising to induce consumers to purchase the Products, including Products sold individually and as part of Halfday variety packs.

138. Plaintiff Kluge purchased a Halfday Prebiotic Iced Tea variety pack through Amazon on or about May 14, 2024, for an order total of $35.99. The variety pack included Halfday Raspberry Iced Tea. Plaintiff saw and relied on Defendant's front-label "3g sugar" representation before purchasing the Halfday Prebiotic Iced Tea variety pack through Amazon. After receiving the product, Plaintiff saw the Raspberry Iced Tea can and the Nutrition Facts panel, which confirmed the same 3-gram sugar representation, including the statement "Total Sugars 3g." Plaintiff relied on Defendant's low-sugar and low-calorie representations in deciding to purchase the product. Had Plaintiff known that Halfday Raspberry Iced Tea contained materially more sugar than represented, he would not have purchased the product, or, at a minimum, would have paid substantially less for it.

139. Plaintiff's reliance was reasonable because Defendant's sugar

representations were express, objective, and appeared on the Products' front labels and in federally regulated Nutrition Facts panels. Sugar content was material to Plaintiff's purchase decision and was among the most important factors driving his decision to purchase the variety pack containing Raspberry Iced Tea.

140.   Plaintiff's injury occurred at the time of purchase because he paid for a Product advertised as containing only 3 grams of sugar per can, but received a Product containing materially more sugar than advertised.

141.   Class members were exposed to Defendant's same or substantially similar false advertising concerning the Products' sugar content and purchased the Products as a result of that advertising.

142.   Defendant's false advertising caused Plaintiff and Class members actual injury. Plaintiff and Class members paid for Products advertised as containing only 3 grams, 3 to 5 grams, or similarly low amounts of sugar per can, but received Products containing materially more sugar than advertised. Plaintiff and Class members lost the benefit of their bargains and paid price premiums attributable to Defendant's false low-sugar and low-calorie advertising.

143.   Plaintiff and the Class seek actual damages or statutory damages of five hundred dollars per violation, whichever is greater, treble damages up to ten thousand dollars for Defendant's willful or knowing violations, reasonable attorneys' fees, costs, injunctive relief, and all other relief permitted under N.Y. Gen. Bus. Law §§ 350 and 350-e.

**SIXTH CAUSE OF ACTION**

**(Breach of Express Warranty; N.Y. U.C.C. § 2-313)**

**(New York Class)**

144.   Plaintiff repeats and incorporates herein by reference each and every allegation above as if set forth fully herein.

145.   Defendant made affirmations of fact and promises on the Products' labels, Nutrition Facts panels, website, and marketing materials. Defendant

represented that the Products contained only 3 grams, 3 to 5 grams, or similarly low amounts of sugar per can and were low-sugar, low-calorie beverages. For Raspberry Iced Tea, by way of example, these affirmations included the front-label representation "3g sugar" and the Nutrition Facts panel representation "Total Sugars 3g."

146.   Defendant's sugar representations were express warranties because they were specific, factual affirmations about the Products' sugar content, related directly to the goods, and became part of the basis of the bargain.

147.   The Products did not conform to Defendant's express warranties because they contained materially more sugar than Defendant warranted. By way of example, Halfday Raspberry Iced Tea did not contain only 3 grams of total sugar per can. Independent laboratory testing showed that Raspberry Iced Tea contained approximately 9.69 grams of sugar per 355 mL can, materially more than Defendant warranted.

148.   Plaintiff Kluge purchased a Halfday Prebiotic Iced Tea variety pack through Amazon on or about May 14, 2024, for an order total of $35.99. The variety pack included Halfday Raspberry Iced Tea. Plaintiff purchased the product in reliance on Defendant's express sugar and calorie representations, including the representations that the Raspberry Iced Tea contained only 3 grams of sugar per can and was a low-sugar, low-calorie beverage.

149.   Had Plaintiff known that Halfday Raspberry Iced Tea contained materially more sugar than Defendant warranted, he would not have purchased the product, or, at a minimum, would have paid substantially less for it.

150.   On July 6, 2026, Plaintiff provided written pre-suit notice to Defendant and Amazon concerning the breach arising from Plaintiff's purchase of a Halfday Prebiotic Iced Tea variety pack, including Halfday Raspberry Iced Tea. On July 17, 2026, Plaintiff provided supplemental written notice clarifying that the alleged breach concerns Defendant's uniform or substantially similar low-sugar warranties

37

for the Products, including the Products contained in Plaintiff's variety pack. The notices identified the transaction, the challenged warranties, the nature of the breach, and the relief requested.

151. Any attempt by Defendant to disclaim or limit the express warranties is ineffective because any such disclaimer conflicts with Defendant's specific affirmations of fact on the Products' front labels, Nutrition Facts panels, website, and marketing materials, and because any purported disclaimer was not clear and conspicuous to reasonable consumers at the point of sale.

152. Plaintiff and the Class were injured because they purchased Products that did not conform to Defendant's express warranties. Plaintiff and the Class paid for Products represented to contain only 3 grams, 3 to 5 grams, or similarly low amounts of sugar per can, but received Products containing materially more sugar than represented.

153. Plaintiff and the Class seek damages measured by the difference between the value of the goods as warranted and the value of the goods as received, including the price premium attributable to Defendant's false low-sugar and low-calorie representations, incidental or consequential damages where allowed, pre- and post-judgment interest, costs, attorneys' fees where available, and all other relief permitted by law.

## SEVENTH CAUSE OF ACTION

## (Breach of Implied Warranty of Merchantability;

## N.Y. U.C.C. § 2-314)

## (New York Class)

154. Plaintiff repeats and incorporates herein by reference each and every allegation above as if set forth fully herein.

155. Defendant is a merchant with respect to the Products. An implied warranty of merchantability arose that the Products would be merchantable, fit for

their ordinary purposes, adequately labeled, and would pass without objection in the trade under the product descriptions.

156. The Products were not merchantable at the time of sale because they did not conform to the product descriptions, labels, Nutrition Facts panels, and packaging under which they were sold. Defendant sold the Products as containing only 3 grams, 3 to 5 grams, or similarly low amounts of sugar per can, but the Products contained materially more sugar than represented. By way of example, independent laboratory testing showed that Raspberry Iced Tea contained approximately 9.69 grams of sugar per 355 mL can.

157. Ready-to-drink beverages sold with materially false sugar representations on their front labels and in their Nutrition Facts panels would not pass without objection in the trade as labeled. The Products were not of the quality or descriptions promised because they contained materially more sugar than represented to consumers.

158. Plaintiff Kluge purchased a Halfday Prebiotic Iced Tea variety pack through Amazon on or about May 14, 2024, for an order total of $35.99. The variety pack included Halfday Raspberry Iced Tea. Plaintiff purchased the product for personal, family, or household use.

159. To the extent New York requires privity for economic loss against a manufacturer on an implied warranty theory, Plaintiff alleges privity or a privity-like relationship with Defendant through Defendant's direct-to-consumer labeling, Nutrition Facts panel, website representations, and marketing scheme, all of which were intended to reach end-user consumers and form the basis of their purchase decisions. Plaintiff further alleges that he and Class members were intended third-party beneficiaries of Defendant's contracts with authorized retailers, distributors, and online sellers that sold the Products to consumers.

160. On July 6, 2026, Plaintiff provided written pre-suit notice to Defendant and Amazon concerning the breach arising from Plaintiff's purchase of a Halfday

Prebiotic Iced Tea variety pack, including Halfday Raspberry Iced Tea. On July 17, 2026, Plaintiff provided supplemental written notice clarifying that the alleged breach concerns Defendant's uniform or substantially similar low-sugar warranties for the Products, including the Products contained in Plaintiff's variety pack. The notices identified the transaction, the challenged warranties, the nature of the breach, and the relief requested.

161.   Plaintiff and the Class were injured because they purchased Products that were not merchantable as labeled and did not conform to Defendant's product descriptions. Plaintiff and the Class paid for Products represented to contain only 3 grams, 3 to 5 grams, or similarly low amounts of sugar per can, but received Products containing materially more sugar than represented.

162.   Plaintiff and the Class seek damages under N.Y. U.C.C. § 2-714, incidental and consequential damages where allowed under N.Y. U.C.C. § 2-715, restitution, pre- and post-judgment interest, costs, attorneys' fees where available, and all other relief permitted by law.

## EIGHTH CAUSE OF ACTION
### (Unjust Enrichment; Pled in the alternative)
### (All Classes)

163.   Plaintiff repeats and incorporates herein by reference each and every allegation above as if set forth fully herein.

164.   Plaintiff conferred a monetary benefit on Defendant by purchasing a Halfday Prebiotic Iced Tea variety pack through Amazon on or about May 14, 2024, for an order total of $35.99. The variety pack included Halfday Raspberry Iced Tea.

165.   Defendant appreciated, accepted, and retained the benefit conferred by Plaintiff and Class members through the sale of the Products, including Raspberry Iced Tea sold individually and as part of Halfday variety packs.

166.   Defendant's retention of that benefit would be unjust because Plaintiff

and Class members paid for Products represented to contain only 3 grams, 3 to 5 grams, or similarly low amounts of sugar per can, but received Products containing materially more sugar than represented. The purchase prices included premiums attributable to Defendant's false low-sugar and low-calorie representations.

167.   Defendant was enriched at the expense of Plaintiff and Class members by receiving revenues and profits from sales induced by false and misleading sugar representations on the Products' front labels, Nutrition Facts panels, website, and marketing materials.

168.   Plaintiff lacks an adequate remedy at law to the extent legal remedies do not fully restore the benefit unjustly retained by Defendant.

169.   Plaintiff and the Class seek restitution and disgorgement of the amounts Defendant unjustly retained, together with interest, costs, attorneys' fees where available, and all other relief permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief as follows:

a.   For compensatory damages in an amount to be proven at trial;

b.   For actual damages, statutory damages, treble damages, and attorneys' fees where available under N.Y. Gen. Bus. Law §§ 349(h), 350, and 350-e;

c.   For restitution in an amount to be proven at trial;

d.   For disgorgement of all monies by which Defendant was unjustly enriched through the sale of the Products, including Products sold individually and as part of Halfday variety packs;

e.   For damages measured by the difference between the price paid and the value of the product as received;

f.   For damages reflecting the price premium attributable to Defendant's false low-sugar and low-calorie representations;

g.   For affirmative injunctive relief requiring Defendant to cease the challenged

false and misleading advertising, labeling, packaging, and marketing practices;

h.  For affirmative injunctive relief requiring Defendant to accurately disclose the sugar content of the Products on their labels, Nutrition Facts panels, website, and marketing materials;

i.  For punitive damages to the extent allowed for the common-law fraud claims;

j.  For pre- and post-judgment interest;

k.  For costs of suit, litigation expenses, and attorneys' fees where permitted by law;

l.  For the establishment of a constructive trust or common fund for the benefit of the Class, as the Court finds appropriate; and

m. For such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and all others similarly situated, hereby demands a jury trial for all claims so triable.

Dated:  July 17, 2026

**WILSHIRE LAW FIRM, PLC**

*/s/ Thiago M. Coelho*
Thiago M. Coelho

*Pro Hac Vice Application Forthcoming*
**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa Street, Sky Lobby
Los Angeles, California 90017
Telephone: (213) 381-9988
Facsimile: (213) 381-9989
Email:
thiago.coelho@wilshirelawfirm.com

*Attorneys for Plaintiff and the
Proposed Class*